UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------
In re

       JOHN R. SCHULER,           98-16537 B

             Debtor         DECISION & ORDER

----------------------------------------------------

              Thomas A. Dorey, Esq.
              P. O. Box 247
              Lakewood, New York 14750
              Attorney for Trustee

              Hiscock & Barclay, LLP
              Bruce S. Zeftel, Esq., of counsel
              1100 M&T Center
              3 Fountain Plaza
              Buffalo, New York 14203-1486
              Attorneys for Marlene Schuler and
                 Pro se for Hiscock & Barclay, LLP

Bucki, U.S.B.J.

     This case presents interesting issues regarding the allowance of claims filed by the spouse of a deceased debtor and by the law firm which represented the spouse in her capacity as executrix of the decedent's estate.

     John R. Schuler was the president and sole stockholder of John R. Schuler, Inc., a corporation engaged in the construction business. John R. Schuler, Inc., filed a petition for relief under chapter 11 of the Bankruptcy Code on July 31, 1998, and John R. Schuler filed his own individual petition under chapter 11 on October 9, 1998. These cases were still open in chapter 11 when Mr. Schuler died on January 5, 2002. Soon thereafter, on motions by the Office of the United States Trustee, this court converted both matters into proceedings under chapter 7.

Marlene Schuler, the wife of John R. Schuler, has filed three proofs of claim in the bankruptcy case of her husband.   Additionally, the law firm of Hiscock & Barclay, LLP, filed a claim for services that it provided at the request of Mrs. Schuler in her capacity as executrix of her husband's estate. To each of these proofs of claim, the chapter 7 trustee for John R. Schuler has filed objections.

*Claim 51 for Subrogation*

In claim 51, Marlene Schuler seeks subrogation with respect to her payment of two obligations.  The first involves an indemnity claim for moneys advanced under a surety bond; the second involves income taxes due under returns that Mrs. Schuler filed jointly with her husband.

In connection with one of its pre-bankruptcy construction projects, John R. Schuler, Inc., obtained a payment bond from North American Specialty Insurance Company in June of 1997.  As required by the insurance company, John and Marlene Schuler agreed to indemnify the surety for any loss.  Subsequent to the commencement of bankruptcy proceedings, North American Specialty Insurance Company paid the substantial claim of a subcontractor and then demanded  reimbursement from Marlene Schuler. Ultimately having paid $116,740.11 in full satisfaction of the surety's right to indemnification, Mrs. Schuler now asserts a claim for this amount from the bankruptcy estate of her husband.

Marlene Schuler contends that she is subrogated to the rights of the surety, and can therefore assert a claim in her husband's bankruptcy for the full amount of her payment.   This argument fails, however, because it confuses the concepts of subrogation and contribution.  Under the agreement with North American Specialty Insurance Company, John R. Schuler, Inc.,

held the position of principal, with primary liability for any covered obligation. Because the insured project was a corporate undertaking, neither John nor Marlene would have had any direct personal obligation to subcontractors. For this reason, the insurance company required that Mr. and Mrs. Schuler sign an agreement of indemnification. Upon satisfying that duty to indemnify, Marlene became subrogated to the rights of the insurance company as against the principal obligor, John R. Schuler, Inc. As against John R. Schuler himself, however, Marlene enjoys only the rights of a co-indemnitor to contribution.

New York Jurisprudence 2nd accurately states that "in subrogation, a third party discharges an obligor's obligation to the obligee and then seeks the right to stand in the obligee's position, so as to be able to assert the obligee's former rights against the obligor." 23 N.Y. JUR. 2D *Contributions, Indemnity and Subrogation* § 6 (2001). In the present instance, John R. Schuler, Inc., is the obligor against whom Marlene may assert subrogation. Under the indemnity agreement with North American Specialty Insurance Company, however, John and Marlene share the status of joint obligors. "Where one of several joint debtors pays the debt, his remedy against the others is confined to a claim for contribution." *Booth v. Farmers and Mechanics' National Bank of Rochester*, 74 N.Y. 228, 232 (1879). Accordingly, as against the bankruptcy estate of her husband, Mrs. Schuler holds only a right to contribution.

As a general rule, "all co-obligors must contribute equally in discharging their common obligation." 23 N.Y. JUR. 2D *Contributions, Indemnity and Subrogation* § 18 (2001). Thus, with respect to contribution, courts in New York have generally followed the legal maxim, *prima pars aequitatis aequalitas* (the first part of equity is equality). *See Asylum of St. Vincent de*

*Paul v. McGuire*, 239 N.Y. 375, 385 (1925).  Marlene Schuler argues that an inequality of benefits or liability will compel an inequality of contribution among co-obligors.  *See* 23 N.Y. JUR. 2D *Contributions, Indemnity and Subrogation* § 19 (2001).  In the present instance, however, the surety contract served to benefit its corporate principal, John R. Schuler, Inc.  As between themselves, John and Marlene Schuler agreed to assume an equal responsibility to indemnify North American Specialty Insurance Company.  John and Marlene could have modified their obligation to contribute equally, 23 N.Y. JUR. 2D, *Contributions, Indemnity and Subrogation* § 20 (2001), but Marlene has presented no evidence of any such arrangement.  Consequently, this component of her claim against the bankruptcy estate will be allowed only for contribution in the amount of $58,370.06, that being one-half of the sum that Mrs. Schuler paid to satisfy the joint duty to indemnify the surety.

As part of the same proof of claim in which she seeks subrogation for her payments to North American Specialty Insurance Company, Mrs. Schuler also requests subrogation for a payment on account of joint tax liabilities. In July of 2002, Marlene Schuler paid $8,000 for income taxes due under returns that she and her husband filed for 1995 and 1998.   In seeking full reimbursement from the bankruptcy estate, Mrs. Schuler contends that the liability belonged to her husband and that she should be accorded the status of an innocent spouse.

By signing the joint income tax returns, Marlene Schuler assumed joint and several liability for any resulting tax.  26 U.S.C. § 6013(d)(3).  To the extent that she might have been entitled to an exception from liability by reason of status as an innocent spouse, Mrs. Schuler should have asserted that position with the taxing authorities prior to making payment.  In so far as the present bankruptcy proceeding is concerned, this court must apply the

outcome that Mrs. Schuler has accepted in her dealings with the Internal Revenue Service.  Sharing primary liability for the tax, Mrs. Schuler enjoys no right to subrogation, but may recover only contribution from the bankruptcy estate of her deceased husband.  Accordingly, this component of her claim will be allowed for $4,000, that being one-half of the sum that she paid to the taxing authorities.

In asserting rights of subrogation, Marlene Schuler argues the application of 11 U.S.C. § 509.  Subdivision (a) of this section states the general rule, that "an entity that is liable with the debtor on . . . a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment."  This standard, however, is subject to the exceptions stated in 11 U.S.C. §509(b) and (c).  In the present instance, subdivision (b)(1)(B) determines the outcome.   It provides that an entity will not be subrogated to the rights of the paid creditor, to the extent that the claim for reimbursement or contribution is "disallowed other than under section 502(e)" of Title 11.   Here, Mrs. Schuler's claim is instead disallowed under 11 U.S.C. §502(b)(1), which provides generally that a claim shall not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor."  For the reasons stated above, with respect to the payments to North American Specialty Insurance and to taxing authorities, New York law does not recognize a claim for full reimbursement.  This being a basis for disallowance other than under section 502(e), section 509(b)(1)(B) excepts the claim of Mrs. Schuler from a right to a greater recovery under section 509(a).

*Claim 30 for Reimbursement of Husband's Legal Fees*

Sometime after John R. Schuler filed his bankruptcy petition, Mrs. Schuler paid $9,500 to her husband's bankruptcy attorneys as an additional

retainer.  With disclosure to this court, these attorneys eventually applied this payment against authorized charges for work during the chapter 11 proceeding.  In claim 30, Mrs. Schuler now asserts an administrative priority for reimbursement of the moneys that she advanced to counsel.  The trustee objects both to any allowance of the claim and to its priority.

Mrs. Schuler apparently paid $9,500 to counsel upon the request of her husband, but without benefit of any loan documentation.   Further, the debtor never obtained court authorization to borrow from his wife.  In light of the marital relationship, the trustee argues that Mrs. Schuler has provided insufficient proof that her advance should be deemed a loan, as opposed to a gift.   In making this argument, however, the trustee overlooks the evidence of the proof of claim itself.

Under penalty of perjury, Marlene Schuler signed claim 30 and filed it in compliance with the requirements of Bankruptcy Rule 3001.  Part (f) of this rule states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  With respect to validity and amount, therefore, the trustee carries the burden to prove the contrary of what Marlene Schuler has asserted in her proof of claim.  But for the presumption of validity that attaches to the proof of claim, the present circumstances would suggest an equal probability that the advance to counsel should be treated either as a loan or a gift.  The proof of claim, however, constitutes prima facie evidence, and as such, will suffice to establish a debt.  In opposition to this proof, the trustee has proffered no contrary evidence about the character of the payment.  Accordingly, by a preponderance of the evidence, this court must overrule the trustee's objection to the existence of a debt to Mrs. Schuler in the amount of $9,500.

Even though claim 30 will suffice to establish the existence of a debt, the trustee correctly challenges Mrs. Schuler's assertion of the priority that 11 U.S.C. §507 accords to administrative expenses. Pursuant to 11 U.S.C. § 503(b)(1)(A), administrative expenses include "the actual, necessary costs and expenses of preserving the estate." However, loans to the estate must satisfy the requirements of 11 U.S.C. §364. Part (a) of this section authorizes a debtor to obtain unsecured credit only in the ordinary course of business. Otherwise, pursuant to section 364(b), the debtor in possession may obtain credit only with authorization from the court, after notice and a hearing. In the present instance, Mrs. Schuler loaned funds to the debtor without benefit of prior court approval. Because the debtor obtained this credit outside the ordinary course of his business, Mrs. Schuler's claim will receive no priority.

Finally, we must consider the fuller impact of the requirement for prior court approval of any loan outside the ordinary course of the business of a debtor in chapter 11. A learned treatise has accurately described this issue:

> Where the borrowing is out of the ordinary course of business and prior court authorization is not obtained, the lender may be relegated to the status of a general unsecured creditor. Indeed, it could be argued that if the loan is not entitled to administrative expense treatment, it is not a claim recognizable in the bankruptcy, since it is neither a prepetition claim nor a claim treated under section 502 or 503 as if it had arisen prepetition.

3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUTPCY ¶364.03[2] 15th ed. rev. 2001). Generally, with respect to non-priority obligations, 11 U.S.C. §502(b) requires the court to determine the amount of a claim "as of the date of the filing of the petition." If this case were still in chapter 11, I would need to decide an unsettled question as to whether Mrs. Schuler's post-petition loan could receive treatment as a general unsecured claim within the

meaning of section 502(b).  Pursuant to 11 U.S.C. §1112, however, the instant matter was converted into a proceeding under chapter 7 of the Bankruptcy Code.  Thus, the status of the claim is resolved by 11 U.S.C. §348(d):

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 . . . of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

Section 503(b) deals with allowed administrative expenses.  Due to the failure to obtain prior authorization from this court, I must deny administrative priority to the claim for reimbursement of Marlene Schuler's payment to counsel.  Instead, pursuant to section 348(d), her claim will be allowed as an unsecured prepetition claim only.

### Claim 35 for Funeral Expenses

In claim 35, Marlene Schuler seeks reimbursement for the cost of her husband's funeral, in the amount of $1,853.68.  Noting that New York Public Health Law §4200 mandates proper disposal of a decedent's body, Mrs. Schuler contends that funeral costs were a necessary and proper expense which the court should allow as a claim against the bankruptcy estate.  The case trustee objects. He views funeral expenses as a contractual obligation of the person who makes the arrangements.  Accordingly, the trustee argues that Mrs. Schuler has no valid claim in bankruptcy, but must look for reimbursement in probate from any assets that are exempt from bankruptcy administration.

Under New York law, funeral expenses are not a debt of the decedent. 41 N.Y. Jur 2d *Decedents Estates* § 1995 (2002); *In re Kraemer's Estate*, 183 Misc. 101, 102; 46 N.Y.S.2d 891 (Surr. Ct. 1944).  In *In re Vitelli's*

*Estate*, 146 Misc. 17; 261 N.Y.S. 266 (Surr. Ct. 1932), an undertaker sought to set aside a gift *causa mortis* on the ground that the decedent had made that gift with an intent to hinder, delay and defraud the petitioner as a prospective creditor. Rejecting this claim, the Surrogate concluded that the "undertaker who buries the remains of a decedent is not a creditor of the departed." 146 Misc., at 19. Rather, New York treats funeral expenses as a charge against the probate estate. *Patterson v . Patterson*, 59 N.Y. 574, 582-83 (1875). Essentially, therefore, the law distinguishes the debts of a decedent from funeral expenses that are a charge only against the dece-dent's estate. *Genet v. Willock*, 93 A.D. 588, 590; 87 N.Y.S. 938 (2nd Dept. 1904). By statute, reasonable funeral expenses become a priority obligation of the probate estate. N.Y. SURR. CT. PROC. ACT § 1811(1). However, such expenses are deemed not to constitute a debt of the decedent himself.

Section 502(b) of the Bankruptcy Code states generally that a proof of claim shall be allowed "except to the extent that – (1) such claim is unenforceable against the debtor and property of the debtor . . . ." Here, the funeral expenses were incurred only after the death of John R. Schuler, that is, at a point in time after his assets had become property of either the probate estate or his bankruptcy estate. Although possibly chargeable against any exempt assets that might have become part of the probate estate, the funeral expenses were incurred after the time that they might have become a claim against property of Mr. Schuler himself, such as through the granting of a security interest. Because the funeral expenses are neither a debt of John R. Schuler nor a charge against his property, this court will not allow them as a reimbursable claim against his bankruptcy estate. To whatever extent Mrs. Schuler may have a claim against those

exempt assets that may be administered in probate, she may seek recovery through the Surrogate's Court.

### Claim 34 for Legal Expenses in Representing Executrix

The law firm of Hiscock & Barclay, LLP, has filed claim 34 in the amount of $5,685, for the value of services rendered on behalf of Mrs. Schuler in her capacity as executrix for the decedent's estate of her husband. In its brief, the firm contends that these fees "would have been paid by Mr. Schuler's estate but for the bankruptcy." Accordingly, the attorneys believe that their charges should now be allowed as a valid claim in bankruptcy. Objecting to the claim, the case trustee argues simply that these legal expenses are not an obligation of the bankruptcy estate.

Circumstances may exist in which a bankruptcy estate will benefit from the administration of an intestate or probate estate of a deceased debtor. In such an event, the case trustee may seek the appointment of special counsel to provide representation in a Surrogate's Court proceeding. *See* 11 U.S.C. § 327(e). For professionals who are duly appointed, this court may approve reasonable compensation for actual, necessary services. 11 U.S.C. § 330(a). Without appointment, however, this court has no authority to award compensation. *In re Keren Ltd. Partnership*, 189 F.3d 86 (2nd Cir. 1999). The formal appointment of counsel serves to avoid misunderstanding and to assure that professionals will perform compensable services only at the behest of the trustee. Here, Hiscock & Barclay, LLP, really served the interests of Marlene Schuler. Accordingly, counsel should seek compensation either from Mrs. Schuler or from any non-exempt or abandoned assets that may be administered through the probate estate of her deceased husband. Any claim against the bankruptcy estate must be disallowed.

*Conclusion*

For all of the reasons stated above, the trustee's objection is sustained in part and overruled in part, as follows: (1) Claim 51 will be allowed as a general unsecured claim in the amount of $62,370.06. This sum includes Mrs. Schuler's entitlement to contribution of $58,370.06, for one-half of the moneys that she paid to North American Specialty Insurance Company, as well as an entitlement to contribution of $4,000 for one-half of the payment to taxing authorities. Otherwise, claim 51 is disallowed. (2) Claim 30, for reimbursement of legal fees, is disallowed to the extent that it asserts priority, but is otherwise allowed as a general unsecured claim in the amount of $9,500. (3) Claim 35 for reimbursement of funeral expenses is disallowed in full. (4) Claim 34 for legal fees incurred by Hiscock & Barclay, LLP, is disallowed in full.

So ordered.

Dated:    Buffalo, New York                                /s/   CARL L. BUCKI
          September 29, 2006                                      U.S.B.J.